IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| SANDRA K. WIGGINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 105-167 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Sandra K. Wiggins ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by counsel, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

## I. BACKGROUND

Based upon claims that she had been unable to work since May 15, 1994, Plaintiff filed for SSI benefits on November 26, 2001, with a protective filing date of August 1, 2001. Tr. ("R."), pp. 48-51. The Social Security Administration denied her original claim and her request for reconsideration. R. 38-40, 43-45. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). R. 46. The ALJ conducted a hearing on December 18, 2003. R. 289. On March 24, 2004, the ALJ issued an unfavorable decision. R. 19-28.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's seizure disorder constitutes an impairment considered "severe" based on the requirements in the Regulations (20 CFR § 416.920).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The claimant has the residual functional capacity ("RFC") to perform medium work[1] with no heights, hazards, or driving. The claimant's impairments do not prevent her from performing her past relevant work as a receptionist (20 C.F.R. § 416.965).

R. 27-28. Because the ALJ determined that Plaintiff could perform her past relevant work as it is generally performed in the national economy, the sequential evaluation process stopped, see 20 C.F.R. § 416.920(a)(4)(iv), and the ALJ concluded that Plaintiff was not

---

[1] 20 C.F.R. § 416.967(c) provides: "(c) Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work."

2

under a disability, as defined in the Social Security Act and regulations at any time through the date of the decision (20 CFR § 416.920). R. 27.

When the Appeals Council ("AC") declined Plaintiff's request for review on August 3, 2005, the ALJ's decision became the Commissioner's final decision. R. 5-7. Having exhausted her administrative remedies, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia requesting a reversal of the adverse decision. Plaintiff brings the following allegations of error: (1) the ALJ erred in determining that Plaintiff's digestive problems, which result in vitamin and iron deficiencies, were not severe impairments, and (2) the ALJ applied the incorrect standard to evaluate Plaintiff's subjective complaints. (Doc. no. 8, pp. 5-8). The Court resolves the matter as follows.

## II. THE STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

4

### III. DISCUSSION

A.  **Plaintiff's Digestive Impairments**

Plaintiff contends that the ALJ erred in determining that Plaintiff's digestive problems, which result in iron and B12 vitamin deficiencies, were not severe impairments and that this determination is clearly erroneous based upon the medical evidence in the record. (Doc. no. 8, p. 5). The Commissioner does not dispute that the medical evidence in the record demonstrates that Plaintiff's stomach surgery contributed to her difficulty absorbing iron and B12. However, the Commissioner argues that the record shows that the iron deficiency was addressed by the iron IV Plaintiff receives, and that Plaintiff's B12 deficiency was adequately treated through B12 injections which Plaintiff administers to herself weekly. Thus, the Commissioner contends that the record does not reflect anything more than a slight limitation on work-related tasks based upon anemia, and the ALJ was correct not to find these impairments severe. (Doc. no. 9, pp. 8-9).

To begin, it will be helpful to explain what constitutes a "severe" impairment under the Social Security Act. A severe impairment is one which significantly limits one's ability to perform "basic work activities." Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). Examples include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;

> (5) Responding appropriately to supervision, co-workers[,] and usual work situations; and
> (6) Dealing with changes in a routine work setting.

<u>Id.</u>

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that her physical problems significantly affect her ability to perform basic work activities. See <u>McDaniel v. Bowen</u>, 800 F.2d 1026, 1031 (11th Cir. 1986); <u>Brady v. Heckler</u>, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*). At the second step of the sequential evaluation process,

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. § 416.920(c). However, the severity test at step two of the sequential process is designed to screen out only clearly groundless claims. <u>Stratton v. Bowen</u>, 827 F.2d 1447, 1452 (11th Cir. 1987) (citing <u>Baeder v. Heckler</u>, 768 F.2d 547, 551 (3d Cir. 1985), for the proposition that the severity test has been described "as a *de minimis* requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working").

In fact, the Eleventh Circuit describes step-two as the "slight abnormality" test. <u>Bridges v. Bowen</u>, 815 F.2d 622, 625 (11th Cir. 1987) (*per curiam*) (citing <u>Brady</u>, 724 F.2d 914). Under this test,

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it

6

> would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild," id., and "the claimant need only show that an abnormality's effect is not so minimal that it would not interfere with his ability to work irrespective of age, education, or work experience." Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (*per curiam*). With these basic principles in mind, the Court turns to Plaintiff's argument.

With regard to the ALJ's consideration of the medical evidence concerning Plaintiff's iron and vitamin deficiencies, the following is a time line of the evidence relating to Plaintiff's iron and B12 deficiencies as set forth in the ALJ's opinion. On April 5, 2000, Dr. John Hudson observed that Plaintiff had problems with iron deficiency anemia since her stomach surgery and had recently re-started B12 injections. R. 21, 126-27. At this time, no additional physical problems were noted. Id. Records from August 2, 2000, indicated that Plaintiff did not get her scheduled iron infusion. R. 21, 123, 126-27. On August 11, 2000, medical records indicated that Plaintiff was not getting as many B12 injections as she needed, but she did not have any additional problems. R. 21, 125.

On March 16, 2001, Dr. Hudson reported that Plaintiff, while receiving B12 injections, was iron deficient, but otherwise had a normal physical examination. R. 22, 123. To remedy the deficiency Plaintiff underwent an iron infusion on March 28, 2001. R. 22, 122-23. In August 2001, Plaintiff's sedimentation rate was normal; however, in October, she

was treated for anemia. R. 22, 122, 272. On May 20, 2002, when Plaintiff saw Dr. Carlos Tan, she was complaining of chronic anemia, among other things, but her physical exam was normal. R. 22, 182-190. Dr. Hudson's July 2, 2002 report again stated that Plaintiff had difficulty absorbing iron, but that she responded nicely to iron infusions. R. 22, 222. On October 22, 2003, Dr. Hudson reported that Plaintiff had B12 and iron deficiencies along with fatigue, which either resulted from these deficiencies or from Plaintiff's seizure medication, Dilantin. R. 23, 274.

In fact, the only medical evidence in the record that contradicts the ALJ's determination are the October 28, 2002, and March 6, 2003, opinions of Dr. J.R. Jowers, one of Plaintiff's treating physicians. On October 28, 2002, Dr. Jowers reported that Plaintiff was disabled due to seizures, arthritis, peptic ulcer disease, and anemia. R. 23, 220, 221. On March 6, 2003, he again concluded that Plaintiff was "totally and permanently disabled." Id.

When considering the ALJ's treatment of Dr. Jowers's opinion, it is well-settled that in the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

8

That having been said, the Commissioner is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991). Finally, under Social Security Ruling ("SSR") 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p; see also 20 C.F.R. § 416.927(e).

In this case, the ALJ properly discounted Dr. Jowers's opinion. The ALJ noted that Dr. Jowers did not provide any clinical or laboratory evidence to support his opinion that Plaintiff was disabled. R. 23, 220, 221. Thus, as this opinion was unsupported by objective medical evidence, the ALJ was justified in discounting the weight of Dr. Jowers's opinions. Lewis, 125 F.3d at 1440.

Based upon the medical evidence, the ALJ determined that Plaintiff's vitamin deficiencies resulted in no more than minimal limitations on her ability to perform work-related activities, and did not constitute severe impairments. Based upon the evidence in the record, the ALJ was justified in this determination. There is substantial evidence to support a finding that Plaintiff's vitamin deficiencies could be remedied through the administration of iron infusions and B12 injections, such that these deficiencies would not significantly impair Plaintiff's ability to perform basic work activities.

9

**B.     Plaintiff's Additional Allegations of Inadequate Review of the Record**

Plaintiff further argues that the ALJ's inadequate review of the record is evident based upon his conclusion that Plaintiff does not have scoliosis, even though there is X-ray evidence which indicated dextroscoliosis of the upper dorsal spine, and even though Dr. Juanita Trimor made a subsequent scoliosis diagnosis. (Doc. no. 8, p. 5). Initially, the Court notes that Dr. Trimor's diagnosis was not presented to the ALJ and is not a proper basis for discrediting the ALJ's determination. See R. 281-84. This evidence was presented for the first time to the AC and, while it is part of the record, only evidence presented to the ALJ will be considered in determining whether substantial evidence supports the ALJ's decision because the AC denied review. See Falge v. Apfel, 150 F.3d 1320, 1322-23 (11th Cir. 1998) ("[W]hen the AC has denied review, we will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence."). In this instance, the AC did not grant review of Plaintiff's case, and Plaintiff does not take issue with the AC's decision to deny review. Plaintiff merely argues that the ALJ's decision is not supported by substantial evidence. Thus, Dr. Trimor's diagnosis need not be considered for the purpose of the Court's recommendation.

As to the X-ray evidence, with respect to the dorsal spine, a minimal curvature of the upper dorsal spine was noted, which suggested dextroscoliosis. R. 185. With respect to the lumbar spine, no scoliosis was apparent, and the results were unremarkable. Id. Nothing in this report suggests that Plaintiff was suffering from scoliosis. Dr. Tan merely observed a minimal curvature of the upper dorsal spine. Id. Thus, the ALJ's statement that Plaintiff did

not have scoliosis is supported by substantial evidence, and it does not reflect an inadequate review of the record.

Plaintiff also alleges, without further specificity, that the ALJ's statement that Plaintiff did not have arthritis was erroneous based upon the medical evidence. (Doc. no. 8, p. 5). The ALJ noted that physical therapy records from October 2003, indicated that Plaintiff had arthritis in her hands, elbows, shoulders, spine, and legs. R. 23, 275. However, the ALJ subsequently observed that although Plaintiff's allegations and the physical therapy records indicate that she has arthritis, there are no physical examinations, clinical findings, or laboratory results supporting this diagnosis. R. 24. Thus, Plaintiff's statement that the ALJ "failed to find any evidence of arthritis" is not accurate. (Doc. no. 8, p. 5). The ALJ considered the evidence in the record regarding Plaintiff's allegations of arthritis and the physical therapy records, but determined that, based upon the lack of objective medical records, this evidence was insufficient to support a finding of an arthritic condition which could be considered a severe impairment. Therefore, it is apparent that the ALJ found evidence of arthritis in the record, considered this evidence, and simply did not consider the condition to be a severe impairment based upon the lack of any objective medical findings.

C.   **Plaintiff's Subjective Testimony**

Plaintiff argues that the ALJ erred by applying the incorrect standard to evaluate her subjective complaints. Specifically, Plaintiff takes issue with the fact that the ALJ's opinion cites Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990), which sets forth the standard applicable in the Fourth Circuit, instead of Holt v. Sullivan, 921 F.2d 1221 (11th Cir. 1991), which sets forth the standard applicable in the Eleventh Circuit. However, despite the citation

discrepancy, the ALJ stated that all of Plaintiff's symptoms, including pain, were evaluated and the ALJ also cited to 20 C.F.R. § 416.929 and SSR 96-7p, which articulates how symptoms, including pain, are to be evaluated. Moreover, 42 U.S.C. § 423(d)(5)(A) (incorporated by 42 U.S.C. § 1382c(a)(3)(H)) is a Congressional mandate that sets forth the appropriate standard to be applied when evaluating subjective testimony. The standards articulated in both the Fourth Circuit and the Eleventh Circuit are encompassed in this Congressional mandate.

Regardless of the jurisdictional problem with the case cite, the ALJ explicitly evaluated the credibility of Plaintiff's testimony in conformity with the Eleventh Circuit's test. The ALJ's opinion stated:

> [O]nce the medical signs or laboratory findings show that the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms, such as pain, the undersigned must evaluate the alleged intensity and persistence of the claimant's symptoms by considering all of the available evidence. The undersigned has not required the presence of objective medical evidence in determining the intensity and persistence of the pain and other symptoms alleged. Rather, the undersigned has specifically considered the nature, location, onset, duration, frequency, radiation, and intensity of any symptom, including pain; the precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side effects of any medication; the treatment, other than medication, for relief of pain or other symptoms the claimant has undergone; the alleged functional restrictions; and claimant's daily activities.

R. 26.

The Eleventh Circuit's three-pronged test for evaluating a claimant's complaints of pain and other subjective symptoms requires that Plaintiff show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the

objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. See Holt, 921 F.2d at 1223. The ALJ's articulated standard includes the elements of Holt requiring "medical signs or laboratory findings show[ing] that the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms" and "evaluat[ing] the alleged intensity and persistence of the claimant's symptoms by considering all of the available evidence." R. 26. Moreover, the ALJ's application of the standard is consistent with Holt. The ALJ stated that although the evidence tends to show a medically determinable impairment, which could produce pain and the other symptoms alleged, the evidence does not support the claimant's allegations of the intensity and persistence of such pain and other symptoms. Id. Thus, medically determinable impairments were found, but the ALJ determined that Plaintiff's alleged limitations were not consistent with these conditions.

Turning to the issue of whether Plaintiff's subjective allegations of disabling symptoms were properly discredited, the ALJ must articulate "explicit and adequate" reasons, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*). "Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985); see also Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (articulating the applicable framework for rejecting a plaintiff's subjective complaints). In this instance, the ALJ considered Plaintiff's description of her limitations, including the physical limitations she alleged after having a seizure, arthritis, hypoglycemia, chronic anemia, dizziness, and nausea. R. 25. However, a review of Plaintiff's physical

examinations revealed that Plaintiff's allegations were simply not consistent with other evidence and were, therefore, not deemed credible. R. 26. Thus, it is apparent that the ALJ properly considered the evidence in conjunction with Plaintiff's complaints and applied the required standard in discounting these allegations.

### D. The Severity of Plaintiff's Seizure Disorder

Lastly, Plaintiff contends that although the ALJ did find Plaintiff's seizure disorder to be a severe impairment, he did not properly address the severity of this disorder. (Doc. no. 8, p. 7). In support of this contention, Plaintiff asserts that the ALJ's observation that Plaintiff's seizure medication, Dilantin, was not at therapeutic levels at certain times seeks to imply some sort of non-compliance on the part of Plaintiff. Id.; R. 22, 25. The Court disagrees. The fact that the ALJ observed that Plaintiff's Dilantin levels were not at a therapeutic level for certain periods does not necessarily imply that Plaintiff was non-compliant with her prescribed treatment. In fact, this situation likely resulted because Plaintiff's dosage level needed to be increased or decreased because the medication was not being administered at the appropriate dosage level. In any event, Plaintiff does not point to anything in the ALJ's decision suggesting that non-compliance was the basis for denying the claim. In sum, this observation does not illustrate an inadequate review of the severity of Plaintiff's seizure disorder by the ALJ.

## IV. CONCLUSION

For the reasons described above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 10-th day of January, 2007, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE